# IN THE COURT OF APPEALS OF IOWA

No. 15-1980
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CONNOR WILLIAM CLAR STEFFENS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Jeffrey L.

Harris (motion to suppress), James D. Coil (bench trial), and Joseph M. Moothart

(judgment and sentence), District Associate Judges.

        Steffens appeals his conviction for possession of marijuana.  **DISTRICT**

**COURT JUDGMENT REVERSED AND CASE REMANDED.**

        David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles

City, for appellant.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Connor Steffens appeals his conviction for possession of marijuana, first offense. He contends the district court erred in denying his motion to suppress the evidence seized following the stop of his vehicle. He argues the stop was unlawful and therefore unconstitutional. Upon our de novo review, we reverse and remand for further proceedings.

### I. Background Facts and Proceedings.

In March 2014, law enforcement officials executed a search warrant at a house and located a small marijuana grow operation and other drug paraphernalia. Steffens was one of four persons present at the house during the search. Although probable cause existed at that time to arrest him for possession of marijuana, a serious misdemeanor, and possession of drug paraphernalia, a simple misdemeanor, Steffens agreed to cooperate with law enforcement and was not arrested that night.

On November 2, 2014, La Porte City Police Department Officer Jordan Ehlers was working third-shift patrol when he observed Steffens driving his vehicle. Officer Ehlers was involved in the execution of the March 2014 search warrant and knew his police department "had been looking for [Steffens in] reference [to] drug charges [the department] had on him from an incident involving a search warrant." For this reason, he initiated a traffic stop of Steffens's vehicle. However, there was no existing arrest warrant for Steffens related to the March 14 incident. Upon contact with Steffens, Officer Ehlers "immediately . . . detected a strong odor of marijuana coming from inside the vehicle." The officer searched Steffens's vehicle, found a pipe containing

marijuana, and arrested Steffens for possession of marijuana. The next day, a criminal complaint was sworn by Officer Ehlers accusing Steffens of possession of marijuana, first offense, in violation of Iowa Code section 124.401 (2013), based upon the November 2 traffic stop and search.[1] Later, the State filed a trial information charging Steffens with the November 2 possession offense.

In February 2015, Steffens filed a motion to suppress the evidence obtained during the search of his vehicle. He asserted the stop, search, and questioning of him violated the Federal and Iowa Constitutions. The State did not file a written resistance. At a hearing on the motion, the parties stipulated to the underlying facts of the case, as the district court found:

> The parties stipulate that on or about the 14th day of March 2014, the [officer] had probable cause to arrest [Steffens] for possession of a controlled substance, a misdemeanor offense. The [officer] elected at this time, however, not to arrest [Steffens] in exchange for [Steffens's] cooperation with law enforcement.
> . . . .
> The parties further stipulate that the officer's stop of [Steffens] in November 2014 was based upon the officer's interest in determining when and whether [Steffens] would comply with the terms of the March 2014 agreement to cooperate with law enforcement. Between [Steffens's] March 2014 misdemeanor offense and [Steffens's] stop in November 2014 and his eventual arrest later that month, [Steffens] had not met with enforcement and had essentially failed to comply with his agreement.

Steffens conceded he was stopped because he "had fallen out of contact with the officer . . . when he was supposed to be cooperating." However, he argued his prior actions, for which he could have been arrested, did not constitute probable cause or reasonable suspicion to justify the stop of his vehicle in November

---

[1] An arrest warrant was later obtained for Steffens based upon the March 14 incident, and he was arrested on that warrant on November 25, 2014. Those charges are not the subject of this appeal.

2014. Conversely, the State asserted there was probable cause for the stop, arguing:

> In this case, here we don't actually have an arrest. This is an encounter between police and the defendant. Yes, they did exercise force by turning on lights. However, this is no different an interaction than if they would have seen him on the side of the street and he started to walk away. They would have told him to stop and talked to him.
>
> So, this is certainly a different type of situation than what we normally run into. However, if there is probable cause to arrest someone and the officer has probable cause, even for a misdemeanor, the officer can arrest that person without an arrest warrant. So, in other words, he can stop and detain that person.
>
> Now, whether he decides to arrest that person at that time or not, he still has the probable cause to stop them. . . . As long as the probable cause is there for the original March incident in this case, the officer could have stopped the defendant at any point to place him under arrest. When he stops him, if he chose not to place him under arrest at that time, that would also be the officer's prerogative, as long as there's probable cause for an arrest.

In its order, the court found the stop of Steffens's vehicle "was incident to the [officer's] interest in determining when and whether [Steffens] would comply with the 'cooperation' agreement." It further found that Steffens's eventual arrest in November was not vitiated by the eight-month lapse since the initial justification for his arrest in March. The court found the probable cause to arrest Steffens related to the March 2014 incident existed until Steffens's eventual arrest on November 25. Also, the court found that Iowa Code section 804.7 did "not require a peace officer to make a warrantless arrest within a certain period of time after the offense has been committed in the officer's presence." In denying Steffens's motion, the court necessarily concluded, without specifically saying so, that the probable cause to arrest arising out of the March incident still existed at the time of the November 2 stop, and though Steffens was not arrested at that

time for the March 2014 incident, his failure to cooperate with law enforcement as agreed permitted Officer Ehlers to stop Steffens's vehicle.

Thereafter, Steffens agreed to a bench trial on the minutes of testimony. The court found Steffens guilty as charged. Steffens now appeals, challenging the court's denial of his motion to suppress.

## II. Standard of Review.

We review the constitutionality of the stop de novo, which requires us to independently evaluate "the totality of the circumstances as shown by the entire record." *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). The State bears the burden of proving a stop and subsequent search did not violate the Fourth Amendment. *See State v. Jackson*, 878 N.W.2d 422, 437 (Iowa 2016) (discussing warrantless search); *State v. Tyler*, 830 N.W.2d 288, 293, 298 (Iowa 2013) (discussing probable cause and reasonable suspicion for an investigatory stop). "If the State fails to carry its burden, all evidence obtained from the . . . stop must be suppressed." *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010); *see also Tyler*, 830 N.W.2d at 293. "In our review of the suppression ruling, we consider not only the evidence at the suppression hearing but also the evidence at trial." *State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005).

## III. Discussion.

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government." *Tyler*, 830 N.W.2d at 291. "Because the search and seizure clause of the Iowa Constitution is nearly verbatim to the language of the Fourth Amendment," we generally "interpret the scope and purpose of the Iowa

Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment." *State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008). Steffens has not proposed a standard for interpreting our search and seizure provisions under the Iowa Constitution differently from its federal constitutional counterpart, so we will apply the general standards as outlined by the United States Supreme Court for addressing a search-and-seizure challenge under the Iowa Constitution. *See Tyler*, 830 N.W.2d at 291-92.

"The Fourth Amendment protects persons from unreasonable intrusions by the government upon a person's legitimate expectation of privacy. This protection includes unreasonable intrusions by law enforcement officers." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004) (internal citation omitted).

It is well-settled law that when a police officer stops a motor vehicle and detains the occupant, the stop constitutes a seizure that implicates the Fourth Amendment. *See, e.g.*, *Brendlin v. California*, 551 U.S. 249, 255 (2007); *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *see also Tyler*, 830 N.W.2d at 292 ("A traffic stop is unquestionably a seizure under the Fourth Amendment."). This is because "occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government." *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984). Consequently, Officer Ehlers's stop of Steffens's vehicle—no matter the reason—was a "seizure" contemplated by the Fourth Amendment.

Nevertheless, the inquiry does not end here, because "[t]he Fourth Amendment is not . . . a guarantee against *all* searches and seizures." *Sharpe*,

470 U.S. at 682. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (footnote and citations omitted). Simply put, the Fourth Amendment only prohibits searches and seizures that are *unreasonable*. *See id.*; *see also Whren*, 517 U.S. at 810; *Sharpe*, 470 U.S. at 682. Thus, whether the stop of Steffens's vehicle was unconstitutional hinges upon whether the stop was "reasonable."

Determining if a particular law enforcement practice was reasonable necessitates "balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Prouse*, 440 U.S. at 654 (footnote omitted). "Reasonableness . . . is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," *Whren*, 517 U.S. at 810, or have probable cause "to believe that the individual has committed a crime," *Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013). *See also Tyler*, 830 N.W.2d at 293. Even absent probable cause, officers can still stop persons under certain circumstances, including the brief stop of one's "moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985); *see also Tyler*, 830 N.W.2d at 292. The reasonable-suspicion

standard "is more than a hunch or unparticularized suspicion, but less demanding than showing probable cause." *State v. King*, 867 N.W.2d 106, 123 (Iowa 2015); *see also Lewis*, 675 N.W.2d at 525 ("The reasonable and articulable suspicion standard of *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] is less than probable cause."). In the context of a vehicular stop for investigatory purposes, mere reasonable suspicion is all that is required. *See King*, 867 N.W.2d at 123. But, probable cause is generally required to "effect a seizure." *See id.*

The State argues on appeal the stop was lawful as Officer Ehlers had reasonable suspicion to believe that criminal activity was afoot, but the State then goes on to assert "the stop of [Steffens's] vehicle was not made on mere reasonable suspicion of a completed misdemeanor; rather, the parties stipulated that the officer had probable cause." The reasonable-suspicion argument was not raised before or addressed by the district court as a justification for the stop. Additionally, beyond this statement in its brief, the State makes no claim the stop was supported by reasonable suspicion. Insofar as the State claims the stop was supported by reasonable suspicion, we find the State has not preserved the argument for our review. *See, e.g.*, *State v. Gaskins*, 866 N.W.2d 1, 4 (Iowa 2015) (not considering any other theory because the "State did not assert that any other theory or exception to the warrant requirement justified the warrantless search the officers performed"); *State v. Short*, 851 N.W.2d 474, 479-80 (Iowa 2014) (not considering consent on appeal because "the State did not argue that Short voluntarily consented to the search"); *Tyler*, 830 N.W.2d at 295 (noting State's argument on appeal was not raised before the district court below and did not require its review but addressing argument because it had no merit); *State v.*

*Ochoa*, 792 N.W.2d 260, 291 (Iowa 2010) ("An argument not made on an issue before the district court is ordinarily waived."). In any event, the State failed to present any evidence that Officer Ehlers had reasonable suspicion to believe criminal activity was afoot at the time of the stop. Consequently, the higher standard of probable cause was required to effectuate a constitutional seizure here. *See King*, 867 N.W.2d at 123.

### A. Stipulation.

The State argues the stop was reasonable because "the parties stipulated that the officer had probable cause." If only it were that easy for the State. The record here evidences that Steffens only stipulated that probable cause existed on March 14, 2014, to arrest Steffens for possession of a controlled substance. Steffens's argument at the motion-to-suppress hearing was that the officer did not have probable cause to stop his vehicle in November 2014. Even the State's appellate brief, in its rendition of the facts, specifies that Steffens was in the house and was in possession of a controlled substance during the March 2014 search, and the "parties stipulated that officers had probable cause to arrest Steffens for possession of a controlled substance *at that time*." (Emphasis added.) Consequently, the stipulation does not resolve the issue of whether, under the specific facts of this case, the existence of probable cause in March 2014 made it reasonable to stop Steffens almost eight months later.

### B. Probable Cause.

"Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing

it." *Lewis*, 675 N.W.2d at 525 (citation omitted). In essence, "the purpose of a probable cause stop is to seize someone who has already committed a crime." *Tyler*, 830 N.W.2d at 293.

Officer Ehlers did not testify at the suppression hearing or trial, but his police reports were submitted at the hearing. Officer Ehlers's November 2, 2014 police report merely stated he initiated the stop because he knew the police department "had been looking for [Steffens] reference [sic] drug charges we had on him from an incident involving a search warrant." Officer Ehlers's later police report—made after he arrested Steffens concerning the March 2014 incident—summarized that, "No arrest [sic] were made that night due to a pending drug investigation. All subjects had agreed to attempt to work off charges. Steffens was giving [sic] multiple opportunities to work with authorities to conduct controlled buys but never committed." There was no written agreement between Steffens and the police department setting forth his agreed-upon obligations for full cooperation, but the parties agreed Steffens "had fallen out of contact with the officer when he was supposed to be cooperating," "[h]e didn't do what he had agreed to do, which was provide information to law enforcement and assist law enforcement." There was no explanation in the record of what the officer or the department had done to contact Steffens between March and November. The parties agreed Steffens was stopped to "make contact with him, find out if he was still going to cooperate."

We are not directed to any cases directly on point. It is undisputed there was no traffic violation in this case. It is clear from this record that when pulling Steffens over, Officer Ehlers had no basis to arrest Steffens for the March

offense given the cooperation agreement. Even had Steffens breached the cooperation agreement, it was not a crime. The State presented no exigent circumstances justifying the stop. Though "we recognize the importance to law enforcement of cooperation from suspects involved in criminal activity," *State v. Wing*, 791 N.W.2d 243, 250 (Iowa 2010), one's expectation of privacy and freedom in the operation of an automobile is also a significant consideration. Courts are "not empowered to suspend constitutional guarantees so that the [State] may more effectively wage a 'war on drugs.' If that war is to be fought, those who fight it must respect the rights of individuals, whether or not those individuals are suspected of having committed a crime." *Florida v. Bostick*, 501 U.S. 429, 439 (1991) (internal citation omitted). Here, we do not find the State established Officer Ehlers had grounds to make the warrantless stop of Steffens's vehicle.

Acknowledging it was not directly on point, the State relied on *Christopher* at the suppression hearing. In that case, an officer observed Christopher driving a car. *Christopher*, 757 N.W.2d at 248. The next day the officer checked on Christopher's driving status and learned he was barred from driving. *Id.* Instead of filing a police report or obtaining an arrest warrant, the officer decided to simply arrest Christopher the next time he saw him. *Id.* Five weeks later, the officer saw Christopher and arrested him for driving while barred. *Id.* Christopher was searched and marijuana and crack cocaine were found in his pant pockets. *Id.* After being charged with two counts of possession of a controlled substance, Christopher filed a motion to suppress, arguing the officer's failure to obtain an arrest warrant violated his constitutional right to be free from

unreasonable searches and seizures. *Id.* at 249. The motion was denied. *Id.* On appeal, the supreme court concluded Christopher's warrantless arrest five weeks after the officer observed him driving while barred did not offend the Fourth Amendment of the United States constitution or article 1, section 8 of the Iowa constitution. *Id.* at 251. We agree *Christopher* is not on point. In the present case, law enforcement officers agreed not to arrest Steffens for the March possession offense in exchange for his cooperation. No such agreement not to arrest existed in *Christopher*. With this significant distinction, *Christopher* is not dispositive here.[2] *See id.*

We conclude the stop was unreasonable and therefore violated Steffens's rights under the Fourth Amendment and article I, section 8 of the Iowa Constitution to be free from unreasonable searches and seizures by the government. Thus, all evidence obtained in the subsequent stop is inadmissible. Accordingly, we reverse the ruling of the district court denying Steffens's motion to suppress, as well as his conviction and sentence, and we remand for further proceedings consistent with this opinion. *See State v. Kurth*, 813 N.W.2d 270, 281 (Iowa 2012) ("[W]e reverse the denial of Kurth's motion to suppress as well his conviction and sentence and remand for further proceedings.").

**DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

---

[2] We also note the police officer personally observed Christopher driving while barred. *Id.* at 248. Such is not the case here because the record does not clearly establish whether Officer Ehlers personally observed Steffens in possession of marijuana during the March house search. Officer Ehlers's March 14, 2014 report states: "After speaking with the occupants of the house it was determined that Steffens . . . [was] knowingly in possession of the marijuana and grinder."